## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **MELANIE BECKEMEYER,** | ][ | CASE NO. 1:17-cv-00695 |
| | ][ | |
| Plaintiff, | ][ | JUDGE BARRETT |
| | ][ | |
| v. | ][ | |
| | ][ | **AFFIDAVIT OF ERNEST P. CHIODO,** |
| **GELCO CORPORATION,** *etc.*, | ][ | **M.D., J.D., M.P.H., M.S., M.B.A., C.I.H.** |
| | ][ | |
| Defendant. | ][ | |
| | ][ | |
| | ][ | |

I, Ernest P. Chiodo, M.D., J.D., M.P.H., M.S., M.B.A., C.I.H., hereby swear, affirm and state as follows:

1. That I received my Medical Degree (M.D.) from Wayne State University School of Medicine .

2. That I received my Master of Public Health (M.P.H.) from Harvard University School of Public Health.

3. That I received my Master of Science in Biomedical Engineering from Wayne State University College of Engineering with a focus on injuries arising from motor vehicles.

4. That I received my Master of Science in Threat Response Management from the University of Chicago.

5. That I received my Master of Science in Occupational and Environmental Science with Specialization in Industrial Toxicology from Wayne State University.

6. That I received my Master of Science in Evidence Based Health Care from the University of Oxford.

7. That I am board certified in the medical specialty of internal medicine.

8. That I am board certified in the medical specialty of occupational medicine.

9. That I am board certified in the medical specialty of public health and general preventive medicine.

10. That I am certified in the engineering specialty board of industrial hygiene as a Certified Industrial Hygienist in the comprehensive practice of industrial hygiene.

11. That I have served as the Medical Director and Manger of Medical and Public Health Services for the City of Detroit.

12. That my position as Medical Director and Manager of Medical and Public Health Services for the City of Detroit was a position of substantial public responsibility such that at the time of my service I had the direct telephone number to the United States White House in the event that I needed to contact the President concerning a public health emergency or disaster in the City of Detroit.

13. That I have served as a clinical assistant professor of internal medicine, family medicine, and public health at Wayne State University School of Medicine.

14. That I have served as an adjunct professor of industrial hygiene and toxicology at Wayne State University.

15. That I have served as the President of the Michigan Industrial Hygiene Society.

16. That I am licensed to practice medicine in the states of Michigan, Illinois, New York, and Florida.

17. That I have been elected to full membership in the Society of Toxicology.

18. That I am a member of the Society of Automotive Engineers.

19. That I am a 2019 inductee into the Engineering Hall of Fame of Wayne State University College of Engineering as a Distinguish Engineer.

20. That Wayne State University being the large state university in the City of Detroit is one of the leading automotive engineering schools in the world.

21. That my opinion is consistent with the teachings of The Reference Manual on Scientific Evidence 3rd Edition which is a joint publication of the Federal Judicial Center and the National Research Council.

22. That I have reviewed the materials, documents, and records produced in this litigation that are itemized as numbers 1 through 20 in my report.

23. That the basis for my opinions include the reviewed records as well as my knowledge, education, training, and experience.

24. That as a Certified Industrial Hygienist I am the engineering specialist most qualified to determine whether or not there is mold contamination of a building structure or vehicle.

25. That a physician that is not a Certified Industrial Hygienist, such as Plaintiff's medical expert Scott W. McMahon M.D., does not have the qualifications to formulate an opinion as to whether or not the industrial hygiene testing of the vehicle was properly conducted since industrial hygiene is not a medical specialty board certification but is rather an engineering specialty board certification.

26. That a physician that is not a Certified Industrial Hygienist, such as Plaintiff's medical expert Scott W. McMahon M.D., does not have the qualifications to formulate an opinion independent of the opinion of a Certified Industrial Hygienist as to whether or not the vehicle in this matter has ever been contaminated with mold since industrial hygiene is not a medical specialty board certification but is rather an engineering specialty board certification.

27. That as a physician, Certified Industrial Hygienist, and automotive engineer who is board certified in occupational medicine, internal medicine, and public health and general preventive medicine, I have the optimal medical and scientific qualifications to determine whether or not Plaintiff's claimed state of ill health was caused by mold exposure in an automobile.

28. That my opinions are consistent with the peer reviewed medical and scientific literature.

29. That the testing of the vehicle conducted by Steven Rucker C.I.H. did not demonstrate mold contamination of the vehicle at the time of the testing.

30. That the failure of Steven Rucker C.I.H. to conduct testing of the air outside of the vehicle resulted in testing that has no meaning since it only demonstrated the presence of mold and not mold contamination of the vehicle. There is mold virtually everywhere but there is not mold contamination everywhere. A comparison of testing inside and outside of the vehicle is necessary and standard in any determination of whether or not the vehicle was contaminated with mold at the time of the testing by Steven Rucker C.I.H. Finding presence of mold in samples obtained by vacuuming the carpet of a vehicle would be expected in virtually all motor vehicles.

31. That even if the vehicle had shown contamination with mold at the time of the testing by Steven Rucker, C.I.H., the testing did not represent that state of the vehicle at the time of usage by

Plaintiff since the time of last usage of the of the vehicle by Plaintiff was over 22 months earlier and there were two subsequent owners of the vehicle before the testing.

32. That the mold testing methodology used by Steven Rucker C.I.H. is not an accepted methodology and is not accepted by the community of Certified Industrial Hygienists.

33. That his failure to conduct air testing inside and outside of the vehicle as well as his vacuuming of the carpet are not part of the accepted methodology accepted by the community of Certified Industrial Hygienists and his conclusions are incorrect and unrelaiable.

34. That Chronic Inflammatory Response Syndrome (CIRS), the disease that Scott W. McMahon, M.D. has opined is afflicting Plaintiff, is not a recognized medical disease.

35. That Dr. McMahon has not excluded or minimized the contribution of diseases unrelated to the claimed mold exposure in this matter as the cause of any state of ill health on the part of Plaintiff.

36. That since Dr. McMahon did not conduct a differential diagnosis of etiology to exclude or minimize the contribution of diseases unrelated to the claimed mold exposure, he did not use the proper methodology that satisfies Daubert to arrive at his opinion of disease causation as described on pages 613 and 690 of the Reference Manual on Scientific Evidence 3rd Edition.

37. That Dr. McMahon's opinion is unreliable since he has not utilized a methodology that satisfies Daubert.

38. That Dr. McMahon is incorrect in his understanding that the vehicle was ever contaminated with mold.

39. That Dr. McMahon is incorrect in his understanding that there was water damage to the vehicle.

40. That the logic utilized by Dr. McMahon is flawed since his opinion is based solely upon a temporal relationship which as indicated on page 217 of the Reference Manual on Scientific Evidence 3rd Edition leads to the blunder of the Post Hoc Ergo Propter Hoc fallacy.

41. That in addition, the reasoning of Dr. McMahon is circular in that he is assuming mold contamination of the vehicle based solely upon Plaintiff's claimed health complaints.

42. That my opinion is contained in my report dated November 26, 2018.

43. If call upon to testify, my testimony will be consistent with my November 26, 2018 report in this matter.

44. That my current curriculum vitae is attached.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
ERNEST P. CHIODO, M.D., M.P.H., C.I.H.

**SUBSCRIBED AND SWORN TO before this, the 11th day of April, 2019.**

_____
**NOTARY PUBLIC**

RYDER J STAGG
Notary Public - State of Michigan
County of Kent
My Commission Expires May 14, 2021
Acting in the County of Wayne

6