UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MELANIE BECKEMEYER | : | CASE NO. 1:17-cv-00695 |
| Plaintiff, | : | JUDGE BARRETT |
| v. | : | MAGISTRATE JUDGE LITKOVITZ |
| GELCO CORPORATION dba Element Fleet Management | : | |
| Defendant. | : | |

PLAINTIFF'S MEMORANDUM CONTRA DEFENDANT'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT SCOTT W. MCMAHON, M.D. (DOC. 65)

     Defendant has filed a Motion (Doc. 65) to exclude Plaintiff's expert, Scott W. McMahon, M.D. which may make a good closing argument to the jury, but which has little bearing on whether Dr. McMahon qualifies as an expert. Defendant previously claimed it had filed a motion to strike McMahon, (Doc. 53, PageID 1281) when in fact it had only filed a motion to strike Plaintiff's expert, Steven Rucker. (Doc. 52). The Rucker motion consisted of one page and a two-page memorandum. Nowhere in that motion or memorandum was there any citation to authority, other than twice referring to the word "*Daubert.*" Implicitly recognizing the obvious deficiencies of its Rucker motion, Defendant has now filed a more thorough motion to strike McMahon. Yet the motion has its own many fatal flaws.

     Just as with the Rucker motion, Defendant has not provided the Court with any testimony of McMahon. In almost every post-*Daubert* case cited in Defendant's motion where plaintiff's experts were excluded – *Terry v. Caputo,* 115 Ohio St.3d 351 (2007), *Kerns v. Hobart Brothers Co.,* 2008 WL 1991909 (Ohio App. 2nd Dist. May 9, 2008), *General Electric v. Joiner,* 522 U.S.

136 (1997), *Allen v. Pennsylvania Engineering Corp.,* 102 F.3d 194 (5th Cir. 1996), and *Pluck v. BP Oil Pipeline Co.,* 640 F.3d 671 (6th Cir. 2011) – the defendant moving party took the deposition of plaintiffs' experts and presented the testimony to the court.[1]

In fact, Defendant has failed to take the deposition of McMahon when given the opportunity, likely not wanting to hear McMahon's responses to the questions or criticisms posed in Defendant's motion. The communications attached hereto as Exhibit A demonstrate that Plaintiff coordinated a June 2019 deposition of McMahon, upon which Defendant reneged. Defendant then ostensibly agreed to an August 2019 deposition date but has failed or refused without explanation to provide the down payment necessary to confirm that date. Furthermore, Defendant has not requested a hearing on this matter and, of course, none has been conducted. Defendant has only filed some reports of its retained experts critical of McMahon. From this professional disagreement, Defendant wants the Court to conclude that Plaintiff's expert should be denied an opportunity to testify in this case. At the very least, Defendant's motion should be held in abeyance until after the August 2019 deposition, if indeed Defendant takes it. If Defendant fails to take the deposition, then the message is clear – Defendant does not want to provide the Court with testimony demonstrating the basis for McMahon's opinions.

In the meantime, if the Court wishes to entertain Defendant's arguments, the Court has McMahon's Affidavit, CV, and extensive report. (Docs. 57, 57-1 and 57-2). Defendant would have the Court believe that Dr. McMahon is some fly-by-night quack. On the contrary, he is a graduate of Creighton University School of Medicine and served his internship and residency at Duke University Medical Center. (Doc. 57-1; PageID 1506). Defendant mischaracterizes Dr.

---

[1] The sole exception is the unique case of *Hooks v. Nationwide Housing Systems, LLC,* 2016 WL 3667134 (E.D. La. July 11, 2016), in which the plaintiffs had a plethora of problems, such as the failure to produce reports from some experts and non-medical experts testifying about medical opinions.

McMahon as solely "a pediatrician." (Doc. 65; PageID 2037). Granted, he is a Board-Certified Pediatrician, but he is also certified in the Shoemaker Protocol for Diagnosis and Treatment of Chronic Inflammatory Response Syndrome (CIRS). (Doc. 57-1; PageID 1507). In 2009, Dr. McMahon founded and remains President of Whole World Health Care, PC, an organization specializing in the diagnosis and treatment of CIRS. (Doc. 57-1; PageID 1506). He has personally diagnosed or treated over 1400 patients with exposure similar to Plaintiff. (Doc. 57-2; PageID 1512). He mentors over a dozen other CIRS practitioners. (Doc. 57-2; PageID 1513). Dr. McMahon has testified on CIRS in four cases in multiple states. (Doc. 57-2; PageID 1513). He has spoken and written extensively on CIRS.

Plaintiff implores the Court to read McMahon's fascinating report in its entirety, consisting of 49 pages of content and 35 pages of attachments. (Doc. 57-2). Dr. McMahon directly addresses all of the defense criticisms, answering such questions as "If CIRS is so prevalent, why doesn't every doctor know about it?" (Doc. 57-2; PageID 1541) and "In sum, does the diagnosis of CIRS cut muster?" (Doc. 57-2; PageID 1548). In answering the first question, he explains that the science is relatively knew and only those who specialize in mold-related illnesses are fully familiar with it, among other reasons. In answering the second question, he cites the peer-reviewed scientific research supporting CIRS.

Defendant asserts that "McMahon's opinions regarding his diagnosis of CIRS is [sic] unreliable as he failed to consider and rule out alternative causes of Plaintiff's symptomology." (Doc. 65, PageID 2037). This criticism is baffling, as Dr. McMahon thoroughly walks us through a comprehensive differential diagnosis analysis in his report. (Doc. 57-2; PageID 1527). He explains and supports his opinions on general and specific causation. (Doc. 57-2; PageID 1555).

None of Defendant's hired guns has personally met, evaluated or treated Plaintiff. None has offered an alternative diagnosis to CIRS. Their purpose is simply to muddy the waters rather than diagnose Plaintiff's tragic condition. The gist of their criticisms is that they do not like the growing support for CIRS as a field of science. Yet Aristotle was criticized by the "scientists" of his time when he produced empirical evidence that the earth is round. Many significant and now commonly-accepted medical discoveries were severely criticized when originally explained, such as antiseptic handwashing, newborn incubators, balloon angioplasty, the viral transmission of cancer, traumatic brain injuries in sports, and the bacterial cause of ulcers. https://www.medscape.com/features/slideshow/medical-breakthroughs#page=1 The proponent of the latter concept remarked, "Everyone was against me. But I knew I was right." Academy of Achievement. Interview: Barry Marshall. May 23, 1998. http://www.achievement.org/autodoc/printmember/mar1int-1

Another basis of Defendant's opposition to Dr. McMahon is that he relies to some extent on the findings of Plaintiff's other scientific expert, Steven Rucker. Rucker tested the vehicle to evaluate microbial toxins that may be linked to Plaintiff's complaints and illness. (Doc. 59, PageID 1712, 1717). Rucker was looking specifically for mold and endotoxin. (Doc. 59, PageID 1717-1718). Rucker found an elevated, harmful concentration of endotoxin under the front passenger seat, compared with the driver's seat, consistent with the location of the previous water intrusion. (Doc. 59, PageID 1730, 1735; Doc. 59-1, PageID 1817-1820).

Endotoxin is the cell wall of gram-negative bacteria. (Doc. 59, PageID 1734, 1737). The source of endotoxins can be food, feces, dirt and organic material. (Doc. 59, PageID 1735). Humans inhale endotoxins when they break down and mix with dust. (Doc. 59, PageID 1737).

The endotoxin reacts with human antibodies to create inflammation, headache, or other symptoms, according to published toxicology. (Doc. 59, PageID 1741-1742).

Defendant nitpicks some alleged minor misstatements by McMahon in his extensive report and Defendant restates arguments it made in support of its motion to exclude Rucker. (Doc. 52). Plaintiff has directly addressed those arguments in its memorandum (Doc. 60) opposing that motion and reincorporates those points herein. McMahon's alleged misstatements are not disqualifying in this regard and their weight is properly left for the jury to evaluate. For example, Defendant criticizes Rucker's method for air and dust sampling, and then extrapolates that McMahon's opinions are flawed to the extent they rely on the alleged deficient testing. Rucker squarely addressed both allegations in his recent deposition. The "view that outdoor air was a requirement for this assessment is misplaced. … The point of this assessment was not to compare the interior of the car to the outdoor air [at the testing facility]. That has no relevance to the exposure of [Plaintiff]. She wasn't there. She wouldn't have had that exposure." (Doc. 59, PageID 1758-1759). The method for collecting the dust is vacuuming. (Doc. 59, PageID 1737). Rucker had to vacuum rigorously to collect the dust, an indication that the endotoxin had been present for quite a long time because of its depth in the carpet and despite multiple professional detailings. ((Doc. 59, PageID 1735, 1766). The endotoxin he found was a "fingerprint, if you will, of some gram-negative bacteria that existed in this car for some period of time." (Doc. 59, PageID 1760-1761). The testing lab ideally likes to receive 0.1 grams of sample to "prep" the samples. But the inability to obtain that amount does not invalidate the results. "It does not change or undermine the value of the endotoxin analysis. It only means that the sample was small and could not undergo the preparatory homogenization procedure." (Doc. 59, PageID 1739).

The law on expert testimony admissibility is clear and certainly in Plaintiff's favor. Judge Black of this Court recently had the opportunity to articulate the standard:

> Pursuant to Rule 702 of the Federal Rules of Evidence, a proposed expert's opinion is admissible if the opinion satisfies the three elements of qualification, relevance, and reliability. [citation omitted]. First, the witness must be "qualified as an expert by knowledge, skill, experience, training or education." Fed. R. Evid. 702. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." [citation omitted]. In turn, testimony is relevant if there is a "fit between the inquiry in the case and the testimony," [citation omitted], such that the expert will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

*Surface v. Conklin,* Case No. 1:15-cv-40, 2018 WL 6257984 (November 30, 2018).

It may indeed be that this case will be a "Battle of Experts." So be it. But a professional disagreement between experts cannot result in the exclusion of one set or another. Under Fed. R. Evid. 702, Rucker meets the threshold for testimony. He is certainly qualified. His testimony is relevant, as it explains the condition which afflicts Plaintiff resulting from her use of the vehicle. Finally, his medical testing is reliable as he thoroughly explains in his report.

The Motion to Exclude must be denied.

                                         Respectfully submitted,

                                         /s/ *Konrad Kircher*

                                         Konrad Kircher (0059249)
                                         Ryan J. McGraw (0089436)
                                         RITTGERS & RITTGERS
                                         12 E. Warren St.
                                         Lebanon, Ohio 45036
                                         (513) 932-2115
                                         (513) 934-2201 Facsimile
                                         konrad@rittgers.com
                                         ryan@rittgers.com
                                         *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing was electronically filed using the Court's CM/ECF system and that a copy was served electronically via that system this 10th day of June, 2019:

                                        /s/ *Konrad Kircher*
                                        Konrad Kircher (0059249)