UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MELANIE BECKEMEYER**, | ][ | CASE NO. 1:17-cv-00695 |
| | ][ | |
| Plaintiff, | ][ | JUDGE BARRETT |
| | ][ | |
| v. | ][ | **DEFENDANT'S REPLY BRIEF IN** |
| | ][ | **SUPPORT OF ITS MOTION TO** |
| **GELCO CORPORATION,** *etc.*, | ][ | **EXCLUDE THE OPINIONS AND** |
| | ][ | **TESTMONY OF PLAINTIFF'S** |
| Defendant. | ][ | **EXPERT SCOTT W. MCMAHON, M.D.** |
| | ][ | **(DOC # 65)** |

Plaintiff's Opposition (Doc #67) is simply one big misdirection and fails to offer any evidence to establish that Dr. Scott McMahon's opinions are reliable, are based on reliable scientific methodology and should be admissible. In this regard, Plaintiff wrongfully suggests that it is Defendant's obligation to depose McMahon (it is not) and in doing so attempts to shift the burden under *Daubert* to Defendant to prove inadmissibility (it isn't). Most important, though, it fails to establish by a preponderance of the evidence that Dr. McMahon's opinions are scientifically reliable. Accordingly, Defendant requests that its Motion to Exclude (Doc #65) be granted.

Plaintiff argues initially that "Defendant has not provided the Court with any testimony of McMahon." This is not true. Dr. McMahon produced a 49-page Report which included 25 additional pages of attachments. Plaintiff filed Dr. McMahon's Affidavit with this Court (Doc # 57) attesting that the Report "express[ed] opinions I hold within reasonable medical certainty, based on my education, training, experience and evaluation of Dr. Melanie Beckemeyer." His testimony is contained in the Report, apparently, as Plaintiff has not filed a supplemental Affidavit.

More importantly, though, it is not Defendant's burden to establish the inadmissibility of Dr. McMahon's opinions and testimony; to the contrary, under *Daubert*, Plaintiff and only Plaintiff bears the burden to establish by a preponderance of the evidence that Dr. McMahon's opinions and testimony are reliable, scientifically supported and therefore admissible. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) ('it is the proponent of the testimony that must establish its admissibility by a preponderance of proof"); *Peters v. DCL Medical Laboratories LLC*, 305 F. Supp. 3d 799, 804 (S.D. Ohio 2018) ("The party proffering the expert testimony carries the burden of establishing, by a preponderance of evidence, the testimony's admissibility"); *Fenley v. Wood Group Mustang, Inc.*, 325 F.R.D. 232, 240 (S.D. Ohio, Mar. 30, 2018) (same); *Miami Valley Fair Housing Center, Inc. v. Preferred Living Real Estate Investments, LLC*, Case No. 2:15-cv-2737, 2018 WL 4690790, *14 (S.D. Ohio, Sept. 28, 2018) (offering party's burden to demonstrate expert's "scientific knowledge . . . derived by the scientific method" and the testimony's admissibility); *Rover Pipeline, LLC v. 10.55 Acres of Land, More or Less, in Ashland County, Ohio*, 5:17-cv-239, 2018 WL 4386024, *3 (N.D. Ohio Sept. 14, 2018); *E.E.O.C. v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 752 (6th Cir., 2014). Here, Defendant presented a plethora of evidence by way of the testimony of experts Dr. Saxon, Dr. Chiodo, Dr. Gots, and Mr. Porter. To counter this evidence, Plaintiff merely relies on Dr. McMahon's report. Though she had every opportunity to present an Affidavit of Dr. McMahon (she had already filed one from him to authenticate his report), she failed to present any evidence to rebut the testimony of Defendant's experts. By failing to do so, Plaintiff has not met her burden to establish the admissibility of Dr. McMahon's opinions and testimony by a preponderance of the evidence.

Nor is it ever incumbent on the moving party to go through the time and expense to depose an expert simply to establish the inadmissibility of that expert's testimony, especially in circumstances where the flawed opinions and methodology are so obvious from the expert's report.  By way of example, in *Broe v. Manns*, 2016 WL 7048988 (M.D. Pa. Dec. 5, 2016), the United Stated District Court for the Middle District of Pennsylvania, Judge Munley, has a specific standing rule that in order to file a *Daubert* challenge, the party must depose the expert. *Id.* at *2.  In *Broe*, the plaintiffs sought to file a *Daubert* challenge without deposing the expert because "the expert's deficiency is revealed by a review of his report alone." *Id.*  Judge Munley departed from his rule, agreeing with plaintiffs and permitting the challenge without the deposition.  In criminal cases, experts are not deposed, yet their opinions are routinely subjected to *Daubert* challenges.  *See, e.g., United States v. Nacchio*, 555 F.3d 1234, 1260-1261 (10th Cir., 2009) (discussing the procedure for challenging an expert's testimony in a criminal case).  There is no procedural requirement to depose an expert prior to filing a *Daubert* challenge as evidenced by the fact that some judges have created their own rule regarding this, *Broe supra*, and from the numerous cases where courts have excluded expert testimony based solely on deficiencies in reports.  Even Plaintiff recognized this truth by citing, in a footnote, *Hooks v. Nationwide Housing System, LLC,* 2006 WL 3667134 (E.D. La. July 11, 2016), a case that is on all fours with the precise issue here.  Beyond *Hooks*, other courts have also excluded flawed expert testimony without a deposition.  *See Vondrak v. City of Las Cruces*, 2009 WL 324155, *3-4, 6, 14-18 (D. New Mexico, Aug. 25, 2009) (excluding expert's opinions in report without deposition testimony).  Procedurally, there is no bar to filing a *Daubert* challenge without having deposed the expert, and Plaintiff has failed to establish that there is any such rule which if it existed,

would run contrary to the burden of establishing admissibility under *Daubert* which here falls squarely on Plaintiff.

Contrary to Plaintiff's argument, it is not necessary that Defendant seek a hearing on its *Daubert* motions to exclude Dr. McMahon's or Mr. Rucker's testimony. *See, Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp.2d 53, 70 (S.D. New York, 2001) ("Courts often hold pretrial evidentiary hearings pursuant to Rule 104(a) to determine whether expert scientific (or specialized) testimony is reliable under *Daubert*, regardless of whether the parties have requested such a hearing"). In this District, a hearing is not required for this Court to grant Defendant's motions. *Nelson, supra*, 234 F.3d at 248-49 (holding that the district court is not required to hold a hearing before excluding evidence pursuant to *Daubert*). In fact, nothing "in *Daubert*, or any other Supreme Court . . . case, mandates that the district court hold a *Daubert* hearing before ruling on the admissibility of expert testimony, even where such ruling is dispositive of a summary judgment motion." *Colon*, 199 F. Supp.2d at 71. A district court does not abuse its discretion by not holding a *Daubert* hearing prior to ruling expert testimony inadmissible. *See, e.g., Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006); *Bill Barrett Corporation v. YMC Royalty Company, LP*, 918 F.3d 760 (10th Cir. 2019) ("A *Daubert* hearing is not 'specifically mandated'"); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 155-156 (3rd Cir. 2000). The same is true when the court determines testimony admissible without a hearing. *E.g., Sliwinski v. St. Edwards*, 2014 WL 5358284, 2014-Ohio-4655, ¶ 15 (Ohio App.9th Dist.). Here, the record is well developed, Dr. McMahon submitted an Affidavit and Report of 74 total pages, the parties have briefed the issues, Mr. Rucker on whose testimony Dr. McMahon's exposure opinions are based was deposed, and Plaintiff had an opportunity to present evidence to oppose Defendant's motion. *Miller*, 439 F.3d at 412, *quoting Group Health Plan, Inc. v. Phillip Morris USA, Inc.*,

344 F.3d 753, 761 n.3 (8th Cir. 2003) ("the basic requirement under the law is that the parties have an 'opportunity to be heard before the district court makes its decision'").

Substantively Plaintiff clearly misreads the testimony of Defendant's medical experts and generally failed to respond to the key aspects of Defendant's Motion(s) to Exclude.

As to Defendant's numerous criticisms of the flawed medical opinions of Dr. McMahon, each of Defendant's experts found that Dr. McMahon's attempted use of the differential diagnosis was improperly employed. While Dr. McMahon's report suggests that he engaged in a differential diagnosis in arriving at the conclusion that one, and only one, condition – CIRS - explained all of Plaintiff's symptoms, Defendant's experts – Dr. Gots, Dr. Chiodo, and Dr. Saxon – all found that Dr. McMahon's methodology in employing the differential diagnosis was flawed and contrary to medical science. In this regard, Dr. Saxon unequivocally testified that Dr. McMahon "is not using differential diagnosis in a valid or acceptable fashion." (Doc #65-3, PAGEID 2279-2280). Dr. Saxon gave several examples of this, which show that rather than using a differential diagnosis to determine the cause of the symptom, Dr. McMahon instead tries to find a condition – and there is no surprise that condition is CIRS, a condition he always finds to fit numerous constellation of symptoms of alleged mold exposure plaintiffs – to fit all symptoms. Dr. Gots testified: "Thus Dr. McMahon, while ignoring/dismissing appropriate diagnoses, focuses with laser-like certainty on a single all-encompassing not-generally accepted pseudo-diagnosis of CIRS. In doing so, Dr. McMahon is not performing differential diagnosis as it is generally accepted in medicine. . . .Dr. McMahon says that there is no other **single entity** other than CIRS that could be responsible for Ms. Beckemeyer's entire myriad of complaints. This proposition is based on a false premise; one need not have a single true pathophysiologic disease that encompasses all of a patient's medical issues. Indeed, as discussed early in Section

6, Ms. Beckemeyer has a number of distinct medical issues, each of which needs to be addressed individually." *Id.*

This is just the tip of the iceberg, though. Dr. McMahon's opinions regarding exposure and condition of the vehicle are flawed, unreliable, based on Mr. Rucker's flawed "route exposure" analysis, and inadmissible. As to route exposure, for instance, Dr. McMahon's opinion is flawed, unreliable and inadmissible because it is founded on the testimony of Mr. Rucker who admitted that that he had no data or information regarding the vehicle in 2016, when in possession of Plaintiff, to give any opinion on its condition. Plaintiff goes so far as to misrepresent Mr. Rucker's testimony claiming that Mr. Rucker "found an elevated, harmful concentration of endotoxin under the front passenger seat." (Doc. #67, at 4.) This is false not to mention irrelevant. Mr. Rucker was asked repeatedly in his deposition if he could state to any degree of probability whether the level of endotoxin found in 2018 was "harmful", and he could not give any such opinion:

> Q. Okay. But that doesn't mean that the level of endotoxin that you found was of any harmful level, correct?
>
> A. All it means is that it was higher than the mean called out in the reference I cited in Tab 4.
>
> Q. And those were means that were calculated based on residences, houses and workplaces, correct?
>
> A. Correct.
>
> Q. Not vehicle?
>
> A. Correct.
>
> Q. All right. And the mean – and I'm using it as I guess a mathematical term - - doesn't equate to harmful level. True?
>
> A. It does not.

6

(Doc #59, PAGEID 1735-1736.)

> Q. Okay. Do you know of any study that speaks to harmful levels of endotoxin?
>
> A. I don't know of any study.

(Doc # 59, PAGEID 1754.)

> Q. All right. And you're not going to say or testify that the levels that you found were harmful levels of endotoxin, right?
>
> A. Correct. I do not know whether they would be harmful or not.

(Doc # 59, PAGEID 1764.) More to the point, though, Rucker could not state with any degree of probability when the bacteria that formed the endotoxin first existed, whether that spot of endotoxin dust existed in 2016, or even when either the bacteria or endotoxin dust first materialized in the RAV4. (Doc #59, PAGEID 1734, "I cannot put a temporal relationship to when the endotoxin was under the seat"; 1756 "I don't know whether it did or whether it did not"; PAGEID1761 "There's no way to date [gram-negative] bacteria" and "I do not know when that bacteria cultivated the vehicle"; 1776-1777 "I do not know the formation or bacterial type that formed the endotoxin" and "I do not know when it was formed"; 1778 "I can't establish when the bacteria that resulted in the endotoxin entered the car"). As Rucker, who inspected the RAV4, cannot say to any degree of probability whether and when the endotoxin dust he discovered in 2018 first existed in the vehicle (again, he vacuumed for 5 minutes and collected an eighth to a quarter inch of dust in a thimble (Doc #59, at PAGEID 1741)), Dr. McMahon certainly cannot offer any such testimony either.

As pointed out by Defendant, but not even mentioned in Plaintiff's opposition, Dr. McMahon relies on Mr. Rucker's "route exposure" which is a hypothesis premised on an

7

assumption that the endotoxin dust located under the passenger seat found during the 2018 inspection existed in 2016. Though he could not state with any degree of probability that the endotoxin was present in 2016, Mr. Rucker hypothesized if the dust was there in 2016, the dust supposedly was blown by the vehicle's HVAC system (though the AC does not blow under the seat) into the back seat at which time it turns and somehow blows into the front driver's seat and then inhaled by the driver. (Doc # 57-2, PAGEID 1522-1523; 1524-1525). Mr. Rucker, however, admitted that he could have, but did not conduct any testing of this hypothesis. (Doc #59, PAGEID 1742-1744.) Such opinions clearly fail the test of reliability under *Daubert*, since the testing was not performed and there is no evidence of the testing's rate of error. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593, 113 S.Ct. 2786 (1993) ("Ordinarily, a key question to be answered" in determining whether a technique is reliable is "whether it can be (and has been) tested"); *accord E.E.O.C.,* 748 F.3d at 752 (finding exclusion was proper where proponent of the testimony failed to present evidence of testing and its accepted rate of error). All opinions of Dr. McMahon based on this untested "route exposure" hypothesis similarly fail for unreliability under *Daubert.*

Again, the major flaw which was conspicuously never addressed in Plaintiff's opposition to the Motion to Exclude Mr. Rucker's opinions (Doc #60), and not addressed in Plaintiff's opposition to the Motion to Exclude Dr. McMahon (Doc #67) is that there is no data regarding the condition of the RAV4 in 2016 when Plaintiff actually drove it. This is allegedly an exposure case, but there is absolutely no evidence that there was actually any exposure to any harmful condition. There is no evidence of (1) substance or toxin allegedly exposed to; (2) than any such substance or toxin was in the vehicle in 2016; (3) if there was such a substance or toxin in the RAV4, the levels of the substances or toxin; (4) how Plaintiff encountered inhalation

8

exposure to the toxin or substance; (5) the levels of inhalation exposure; (6) the levels of inhalation exposure necessary to result in symptoms or an adverse health condition; and (7) whether, in fact, Plaintiff had such exposure! Neither Mr. Rucker nor Dr. McMahon offer any cogent, informed, reliable scientific testimony as to any of these material elements of Plaintiff's claim.  Neither Mr. Rucker nor Dr. McMahon can present any valid, scientifically reliable opinion that the vehicle was contaminated in 2016, the alleged toxin it was contaminated with, and the levels of those toxins.  Such opinions were not expressed by Mr. Rucker, who readily admitted he did not and could not form any such opinions.  Dr. McMahon, who did not inspect the vehicle, likewise cannot express any such opinions.  This kind of speculative testimony is the very reason that *Daubert* was decided and that the Rules of Evidence require reliable, probative scientific testimony.  *Daubert'*s exclusionary function exists for cases just like this one, where there is a sheer lack of the necessary expert testimony for the Plaintiff to proceed to a jury.

For the foregoing reasons, those set forth in Defendant's Motion to Exclude (Doc #65) and those expressed in the attached Affidavits of Dr. Gots, Dr. Saxon, Jeremy Porter and Dr. Chiodo, Dr. McMahon's opinions, methodology, and conclusions are utterly unreliable, are irrelevant and are not scientifically based such that they must be excluded under *Daubert*.

         Respectfully submitted,

         */s/Colin P. Sammon*
         MICHAEL A. PAGLIA, ESQ. (0070542)
         COLIN P. SAMMON, ESQ. (0076011)
         **RITZLER COUGHLIN & PAGLIA, LTD.**
         1360 East Ninth Street
         1000 IMG Center
         Cleveland, OH  44114
         Office (216) 241-8333
         Facsimile (216) 241-5890
         csammon@rcp-attorneys.com

         *Attorneys for Defendant Gelco Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2019 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Colin P. Sammon*
COLIN P. SAMMON (0076011)