UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Melanie Beckemeyer,

    Plaintiff,

        v.                                     Case No. 1:17cv695

Gelco Corporation,                     Judge Michael R. Barrett

    Defendant.

## **OPINION & ORDER**

This matter is before the Court upon Plaintiff's Motion for Reconsideration (Doc. 38); and Defendant's Motion to Strike Portions of Amended Complaint (Doc. 39). Also before the Court is Defendant's Motion for Summary Judgment (Doc. 55). Related to the summary judgment motion is Defendant's Motion for Leave to File Exhibit 5, Declaration of RoseAnn Avilez (Doc. 54); Plaintiff's Motion to Strike Defendant's Motion for Leave (Doc. 56); Defendant's Motion to Strike Affidavit and Exclude Opinions and Testimony of Plaintiff's Expert Scott W. McMahon, M.D. (Doc. 65); and Motion to Exclude Plaintiff's Expert Opinions of Steven Rucker, CIH (Doc. 52). These motions have been fully briefed (Docs. 40, 42, 55, 60, 61, 63, 64, 66, 67, 68).

    **I.**     **BACKGROUND**

Plaintiff's claims stem from a Toyota RAV4. Plaintiff claims the vehicle was contaminated with mold or some other environmental hazard which caused her to develop severe health conditions. Plaintiff's employer, Avanir Pharmaceuticals, contracted with Defendant Gelco Corporation[1] to provide Plaintiff with the vehicle. Plaintiff drove the

---

[1]Gelco Corporation is now known as Element Fleet Corporation.

vehicle intermittently from May 6, 2016 through September 23, 2016.

In her original complaint, Plaintiff brought claims for negligence and breach of contract. Plaintiff moved to amend her complaint in order to add factual allegations. The Court granted Plaintiff leave to amend the complaint, but only as to the negligence claim, since amending the breach of contract claim would be futile. (Doc. 34). Plaintiff seeks reconsideration on this issue. (Doc. 38). Defendant seeks to strike portions of the Amended Complaint because according to Defendant, the Amended Complaint sets forth allegations that go beyond the scope of the leave to amend permitted by the Court. (Doc. 39).

## II. ANALYSIS

### A. Motion for Reconsideration

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion to amend judgment under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir. 1991). There are three grounds for amending a judgment under Rule 59: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). However, a motion made under Rule 59(e) is not an opportunity to reargue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citation omitted). The court should use its "informed discretion" in deciding whether to grant or deny a Rule 59(e) motion. *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

Plaintiff asks the Court to reconsider its dismissal of her breach of contract claim

based on a document which was discovered subsequent to the briefing on the Motion for Leave to Amend. Plaintiff maintains that this document, titled "Maintenance Management Addendum," shows that Plaintiff was an intended third-party beneficiary of the contract between Avanir and Defendant. (Doc. 38-1).

Even though there is some indication that Plaintiff had possession of this document while her Motion for Leave to Amend was pending (See Doc. 40, PAGEID# 298), the Court will nevertheless reconsider its decision to deny Plaintiff leave to amend her breach of contract claim.

As this Court previously explained, in Ohio, the "intent to benefit" test is used to determine whether a third party is an intended beneficiary of a contract. *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 200, 957 N.E.2d 3, 6 (Ohio 2011). Intent is determined by looking at the language of the contract. *Id.* Accordingly, "for an injured third party to qualify as an intended third-party beneficiary under a written contract, the contract must indicate an intention to benefit that third party." *Id.* at 8.

In ruling on Plaintiff's Motion for Leave to Amend, the Court noted that the Master Lease Agreement between Avanir and Defendant does not indicate an intention to directly benefit Plaintiff. In the Master Lease Agreement, Avanir is referred to as the "Customer." As part of the Agreement, Defendant agrees "to lease to Customer and Customer hereby agrees to lease from [Defendant] certain Vehicles for use in its business." (Doc. 14-1). Under the Maintenance Management Addendum, Avanir is again referred to as the "Customer." The Addendum states that Defendant "provides a program to minimize Customer's vehicle operating costs, driver downtime and administrative cost associated with the payment of multiple suppliers." (Doc. 38-1). The Addendum does little to

3

demonstrate that Plaintiff was an intended beneficiary of the agreement between Avanir and Defendant. Any mention of a "Customer driver," such as Plaintiff, is in the context of reducing driver downtime or administrative costs, which is a benefit to the Customer. For example, the Addendum explains that Defendant is able to lower costs because it maintains a database of vendors who have agreed to provide services; but "[i]f a driver has an emergency in a remote location or with an inoperable vehicle, a vendor may be set up at the time of the first expected use." The Addendum also states that Defendant "will not refer a Customer driver to a vendor about which [Defendant] has knowledge of or a reasonable basis of concern about the vendor performing defective and dangerous repairs." The Addendum then adds: "Customer acknowledges, however, that (i) [Defendant] provides this service from a phone center in Minnesota and does not observe either the vendor's operation or any repair; (ii) although drivers/customers may provide information about problematic repairs and vendors, provision of such information is entirely voluntary and nonsystematic."

After reviewing the above contract language, and other language in the Addendum, the Court concludes that Plaintiff was not an intended third-party beneficiary under the Master Lease Agreement; and she has no enforceable rights under the Master Lease Agreement or its Maintenance Management Addendum. Therefore, upon reconsideration, the Court concludes Plaintiff's Amended Motion for Leave to Amend her Complaint would be futile as it relates to her claim for breach of contract. Accordingly, Plaintiff's Motion for Reconsideration (Doc. 38) is DENIED.

**B. <u>Motion to Strike Portions of Amended Complaint</u>**

Defendant argues that this Court should strike the allegations in Plaintiff's

Amended Complaint which exceed the scope of the leave to amend granted by the Court.

Federal Rule of Civil Procedure 12(f) provides that, on motion of a party, the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.P. 12(f). This Court has stricken an amended complaint where new allegations were added to the complaint which exceeded the court's grant of leave to amend. *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 360 (S.D. Ohio 2012).

Defendant moves to strike allegations that Defendant was a supplier under Ohio's Product Liability Act ("OPLA"). Specifically, Defendants ask that Paragraphs 16 and 18 be stricken in their entirety and that the language "providing to Plaintiff a vehicle which constituted a health hazard" be stricken from Paragraph 22.[2] However, this Court has already determined that the allegations in the Amended Complaint do not set forth a products liability claim, and Plaintiff's negligence claim is limited to Defendant's response once Plaintiff notified Defendant that the vehicle was contaminated. (See Doc. 34, PAGEID# 168-69, 171). Accordingly, Defendant's Motion to Strike Portions of Amended Complaint (Doc. 39) is DENIED.

---

[2]These paragraphs are as follows:

16. Defendant had a duty to provide a safe vehicle to Plaintiff which would avoid doing harm to Plaintiff.
. . .

18. Defendant knew or should have known that the vehicle it supplied to Plaintiff was contaminated.
. . .

22. Defendant breached these duties by failing to exercise due care, providing to Plaintiff a vehicle which constituted a health hazard and by failing to adequately alleviate the hazard.

(Doc. 35).

## C. Motion for Leave to File Declaration of Roseann Avilez and Motion to Strike

Defendant seeks leave to file Exhibit 5, which is the Declaration of RoseAnn Avilez (Doc. 54-1). Defendant explains that it was not able to file the Declaration earlier because Avilez was out of the country for a period of time before the dispositive motion deadline. Plaintiff does not oppose the filing of the Declaration, but has filed a Motion to Strike Defendant's Motion for Leave to File the Declaration of Roseann Avilez which seeks to strike paragraphs 5, 7, 10, 18, 19, 20, 36 and 37 of the Declaration of Roseann Avilez (Doc. 54-1) on the grounds that they purport to offer opinions of a lay witness beyond that allowed by Federal Rules of Evidence 701. Defendant responds that Avilez served as fleet manager for Avanir, and her statements are based on her experience and knowledge of the administration of the fleet program.

Federal Rule of Evidence 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. In distinguishing lay testimony from expert testimony, the Sixth Circuit has explained that "lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (citing *State v. Brown*, 836 S.W.2d 530, 549 (Tenn.1992)). The Court notes

that the opinions stated by Avilez in her declaration are not technical, and do not involve any specialized skill or expertise. For the most part, Avilez repeats what is stated in the written policies and protocols identified by her in her declaration. (Doc. 54-1, Avilez Decl. ¶ 3). Therefore, the Court concludes that Avilez's statements are proper lay opinion testimony. However, the Court also notes that Avilez's statements have limited evidentiary value in that they state what Plaintiff should or should not have done under the policies and protocols, and what Avilez was told Plaintiff did.

Plaintiff also argues that Avilez offers legal conclusions on key issues in the case such as whether Plaintiff had a duty to ensure that the vehicle was delivered to the repair facility and whether Defendant's conduct was reasonable. "It is well settled that courts should disregard conclusions of law (or "ultimate fact") found in affidavits" submitted in support of motions for summary judgment. *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002). "When ... conclusions of law appear in an affidavit ... the extraneous material should be disregarded, and only the facts considered." Id. at 643-44 (quoting *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 121 (6th Cir.1981)). Therefore, to the extent Avilez offer legal conclusions, the Court will disregard these portions of the declaration.

Accordingly, Defendant's Motion for Leave to File Exhibit 5, Declaration of RoseAnn Avilez (Doc. 54) is GRANTED; and Plaintiff's Motion to Strike Defendant's Motion for Leave (Doc. 56) is DENIED.

### D. Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiff's negligence claim. (Doc. 55).

7

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In reviewing a summary judgment motion, courts are required to view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

To prevail on a negligence claim in Ohio, a plaintiff must prove: (1) the existence of a legal duty; (2) defendant's breach of that duty; and (3) injury that is the proximate cause of the defendant's breach. *Wallace v. Ohio Dep't of Commerce*, 773 N.E.2d 1018, 1025 (Ohio 2002).

Defendant argues that Plaintiff has failed to establish that Defendant owed any duty to Plaintiff, or that Defendant breached any alleged duty to Plaintiff.

The Supreme Court of Ohio has explained:

> "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co.*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; *see, also, Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505. This court has often stated that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty

element of negligence is satisfied. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271; *Commerce & Industry*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. In addition, we have also stated that the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198; *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph one of the syllabus. Admittedly, however, the concept of duty in negligence law is at times an elusive one.

*Wallace v. Ohio Dep't of Commerce*, 96 Ohio St. 3d 266, 274, 773 N.E.2d 1018, 1026 (Ohio 2002).

Under the "voluntary duty" doctrine, Ohio courts have held "that once a duty is undertaken voluntarily, it must be performed with ordinary care." *Boerner v. Liberty Mut. Ins. Co.*, 748 F. Supp. 535, 539 (S.D. Ohio 1989) (quoting *Sawicki v. Village of Ottawa Hills*, 37 Ohio St.3d 222, 525 N.E.2d 468, 474 (1988)). This doctrine is based on Section 323 of the Restatement of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.3 Under this doctrine, Ohio courts have found a negligent action by a contractor can serve as a voluntary assumption of a duty to foreseeable plaintiffs. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1094 (6th Cir. 2010) (citing

---

[3]Although the Ohio Supreme Court has not expressly adopted Section 323, the court has cited Section 323 with approval. *Seley v. Searle & Co.*, 67 Ohio St.2d 192, 202, 423 N.E.2d 831, 839, fn. 7 (Ohio 1981).

9

*Briere v. Lathrop Co.*, 22 Ohio St.2d 166, 258 N.E.2d 597, 602 (1970) (holding general contractor liable for painter's injury where employee of general contractor assisted subcontractor's employee in moving scaffold, thereby proximately causing painter's fall from scaffold).

As this Court has explained, to prevail under § 323(a):

> the increased risk of harm must be measured against "the risk that would have existed had the defendant never provided the services initially." *Wheatley v. Marietta College*, 2016-Ohio-949, 48 N.E.3d 587, at ¶ 92 (4th Dist.) (internal citations omitted). That is, the "negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance." *Id.* Generally, this requires "sins of commission rather than omission." *Wissel v. Ohio High School Athletic Ass'n*, 605 N.E.2d 458, 465 (Ohio Ct. App. 1992) (quoting *Turre v. Government of the Virgin Islands, Virgin Islands Water & Power Auth.*, 938 F.2d 427, 432 (3d Cir. 1991)). Under § 323(b), the plaintiff's reliance must usually be "based on specific actions or representations which cause the person[ ] to forego other alternatives of protecting themselves." *Wissel*, 605 N.E.2d at 465 (quoting *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 807 (Minn. 1979)).

*Reed v. Bove*, No. 2:17-CV-168, 2019 WL 3779866, at *6 (S.D. Ohio Aug. 12, 2019). In addition, the scope of the duty is limited to that actually undertaken. *Sawicki*, 525 N.E.2d at 474.

Here, soon after Plaintiff began her employment with Avanir, Defendant emailed Plaintiff program materials which explain that Defendant is "pleased to be the fleet management provider for Avanir Pharmaceuticals." (Doc. 50-8, PAGEID# 882; Doc. 50, Melanie Beckemeyer Dep. at 117, PAGEID# 1826). The materials explain that it is Defendant's goal "to provide best-in-class service to help you manage and operate your company vehicle effectively and efficiently." (Doc. 50-8, PAGEID# 882). The materials list Defendant's programs which Avanir "has enrolled in to assist you in maintaining your company vehicle." (Id.) The materials also include phone numbers and instructions

regarding "How, What and When" to call about problems with the vehicle. (Id.)  Included in these numbers is a number "[f]or assistance with vendor locations, vehicle maintenance consultation, unscheduled maintenance, glass, and roadside assistance."  (Id.) [4] Defendant informed Plaintiff that its Driver Support Center should be the "first point of contact for all your fleet vehicle needs."  (Doc. 50-12, PAGEID# 932).  Based on this evidence, the Court finds that Defendant voluntary assumed a duty to provide Plaintiff with assistance in the maintenance of the Toyota RAV4 assigned to her.  Therefore, Defendant had a duty to exercise reasonable care in providing Plaintiff assistance with the maintenance of the vehicle.

However, for liability to attach, in addition to establishing a breach of the duty to exercise reasonable care, Plaintiff must demonstrate that Defendant's alleged failure to exercise reasonable care either (a) increased the risk of harm, or (b) induced detrimental reliance.  *Wissel v. Ohio High Sch. Athletic Assn.*, 78 Ohio App. 3d 529, 540, 605 N.E.2d 458, 465 (Ohio Ct. App. 1992).

There is evidence in the record that before the RAV4 was delivered to Plaintiff, it was held in storage.  (Doc. 58, Joel Howard Rollo Dep. at 27; Doc. 58-2).  Defendant's vehicle transport vendor, Professional Automotive Relocation Services ("PARS"), picked up the RAV4 from another Avanir employee when she left the company.  (Rollo Dep. at 28).  PARS then stored the RAV4 in an open parking lot owned by PARS.  (Rollo Dep. at 28).  When Defendant directed PARS to deliver the RAV4 to Plaintiff, a PARS employee inspected the RAV4 and discovered that water had leaked into the car,

---

[4] Defendant contracts with these vendors as part of its maintenance management program. (Doc. 36, Lynn Borrell Dep. at 21).  Defendant pays the vendors directly for any services performed by the vendors. (Borrell Dep. at 37).

11

probably through the partially-opened front passenger window. (Doc. 47, Sharon Mitchell Dep. at 21). The front passenger seat and floorboard were wet. (Id.) This condition was noted by PARS on the Bill of Lading/Condition Report for the RAV4, which stated: "Leaks water by passenger sun visor!!" (Doc. 47-1, PAGEID# 476). Normally, PARS would call Defendant to seek approval to either move forward with delivery of the vehicle, or to have the problem addressed. (Rollo Dep. at 47-48). However, Defendant's call log shows that Defendant was not aware of the issue until Plaintiff called and informed Defendant of the leak on May 6, 2016. (Doc. 36, Lynn Borrell Dep. at 48).[5]

When Plaintiff informed Defendant of the leak, Defendant directed her to take the RAV4 to a Toyota dealership for maintenance and gave her a choice of dealerships to use. (Doc. 50, Melanie Beckemeyer Dep. at 188, 193-194). Plaintiff chose the Toyota dealership which was closest to her home. (Beckemeyer Dep. at 194). However, because Plaintiff was required to complete an intensive home study course for new employees, Plaintiff did not take the RAV4 to the Toyota dealership until over a month later on June 23, 2016. (Doc. 50, Beckemeyer Dep. at 101, 176, 196). It was at that time Plaintiff noticed she was dizzy when she drove the RAV4. (Doc. 50, Beckemeyer Dep. at 196). Plaintiff told Defendant that she wanted the car remediated for mold. (Doc. 50, Beckemeyer Dep. at 196). Plaintiff also told the Toyota dealership that she wanted the car remediated for mold. (Doc. 50, Beckemeyer Dep. at 197-98). While the

---

[5]The log shows that Plaintiff called Defendant on May 6, 2016. (Doc. 36-5). An initial entry in the log states: "Driver received her Unit and the paperwork stated the Unit has a water leak by the passenger sun visor. Driver wanted to know why she was sent a vehicle with an issue like this and how she can get it fixed ASAP. Please contact driver to assist." The next entry in the log states: "Please contact driver and advise her to call Element maintenance at 800-328-6363 and work with them to get leak repaired. We were not aware of this issue and maintenance should be able to get it resolved." (Id.)

Toyota dealership was not able to perform mold remediation, it did detail the car at Plaintiff's request. (Doc. 49, Steve Russell Dep. at 12, 36). In addition, a repair technician for the Toyota dealership found a damaged washer line. (Russell Dep. at 20). This line runs from the washer fluid tank near the engine, up the "pillar" of the car's windshield, into the roof, and down the back of the car to the sprayer for the rear windshield wiper. (Russell Dep. at 22). The Toyota dealership returned the RAV4 to Plaintiff on July 9, 2016. (Doc. 51, Beckemeyer Dep. at 252). Plaintiff drove the vehicle until approximately September 22, 2016. (Doc. 54-1, PAGEID# 1490). At that time, Plaintiff told Avanir that she was having severe allergic reactions to the mold in the vehicle and requested that Avanir replace the vehicle. (Id.) Avanir approved a rental vehicle for Plaintiff and made arrangements to have the RAV4 picked up. (Doc. 54-1, Roseann Avilez Decl., PAGEID# 1483). The RAV4 was later removed from Avanir's fleet and sold at auction. (Id.)

Plaintiff has not demonstrated that Defendant failed to exercise reasonable care in providing Plaintiff assistance with the maintenance of the RAV4. While Plaintiff points to the discovery of the leak by PARS, there is nothing in the record which shows that PARS informed Defendant of the leak. The evidence in the record shows that Defendant first learned of the problem when Plaintiff brought it to their attention on May 6, 2016. Once Defendant was aware of the problem, it directed Plaintiff to take the RAV4 to a Toyota dealership. Plaintiff does not claim that Defendant was negligent in making this recommendation. The record demonstrates that once Defendant was made aware of the problem, its response was timely. There is no evidence that Defendant was negligent in the selection of the vendors who provided maintenance. Plaintiff was given

a choice of dealerships to perform the maintenance, and Plaintiff chose the dealership closest to her house. There also is nothing in the record showing that Defendant was aware that there were still issues with the RAV4 after the Toyota dealership returned the RAV4 to Plaintiff on July 9, 2016. As such, even if the Court were to draw all reasonable inferences in the light most favorable Plaintiff, Plaintiff has not established that in providing assistance to Plaintiff, Defendant increased the risk of harm to Plaintiff. There is no evidence that Plaintiff was in a worse situation than if Defendant had never helped Plaintiff find a Toyota dealership and pay for the services rendered at the dealership. There is also no evidence in the record of specific actions or representations by Defendant which caused Plaintiff to forego other alternatives of protecting herself. Therefore, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's negligence claim. Accordingly, Defendant's Motion for Summary Judgment (Doc. 55) is GRANTED.

### E. Motion to Exclude Testimony of Steve Rucker

Defendant moves this Court to exclude the opinions and report of Plaintiff's expert Steve Rucker, CIH pursuant to Rule 702 of the Federal Rules of Evidence. (Doc. 52). However, Rucker's expert report goes to the issue of whether mold contamination existed in the RAV4. Because the Court finds it unnecessary to reach this issue, Defendant's Motion to Exclude Testimony of Steve Rucker (Doc. 52) is DENIED as MOOT.

### F. Motion to Exclude Opinions and Testimony of Scott McMahon, M.D.

Defendant moves to exclude the opinions and report of Plaintiff's expert Scott W. McMahon, M.D. pursuant to Federal Rule of Evidence 702. (Doc. 65). However, Dr. McMahon's report goes to the issue of whether Plaintiff's injury was the result of being exposed to mold contamination in the RAV4. Because the Court finds it unnecessary to

reach this issue, Defendant's Motion to Exclude Opinions and Testimony of Scott McMahon, MD (Doc. 65) is DENIED as MOOT.[6]

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Reconsideration (Doc. 38) is **DENIED**;

2. Defendant's Motion to Strike Portions of Amended Complaint (Doc. 39) is **DENIED**;

3. Defendant's Motion to Exclude Plaintiff's Expert Opinions of Steven Rucker, CIH (Doc. 52) is **DENIED as MOOT**;

4. Defendant's Motion for Summary Judgment (Doc. 55) is **GRANTED**;

5. Defendant's Motion for Leave to File Exhibit 5, Declaration of Rose Ann Avilez (Doc. 54) is **GRANTED**;

6. Plaintiff's Motion to Strike Defendant's Motion for Leave (Doc. 56) is **DENIED**; and

7. Defendant's Motion to Strike Affidavit and Exclude Opinions and Testimony of Plaintiff's Expert Scott W. McMahon, M.D. (Doc. 65) is **DENIED as MOOT**.

8. There appearing to be no remaining matters before this Court, this matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                         */s/ Michael R. Barrett*
                                         Michael R. Barrett
                                         United States District Judge

---

[6] For the same reasons, the Court finds it unnecessary to reach the issue of raised by Plaintiff regarding an adverse inference instruction based on the destruction of evidence.